UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER NICHOLSON BEY,

     Plaintiff,

v.                                   Case No. 19-10871
                                     Honorable Victoria A. Roberts

SHARON OLIVER, et al.,

     Defendants.

_____/

## ORDER: (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF No. 40]; and (2) DISMISSING THE CASE

## I.    INTRODUCTION

Christopher Nicholson Bey ("Plaintiff"), a Michigan prisoner proceeding *pro se*, brings this civil rights case under 42 U.S.C. § 1983 against Dr. Sharon Oliver, Physician Assistant Joshua Buskirk, and an unknown Utilization Management Medical Director for the Michigan Department of Corrections ("MDOC").

Plaintiff's sole remaining claim is for deliberate indifference to his medical needs in violation of his right to be free from cruel and unusual punishment. He alleges that he was not given proper medical care for gallstones and gallbladder pain while confined at the Saginaw Correctional Facility ("SRF") from May 2016 to June 2017.

Dr. Oliver and Buskirk ("Defendants") move for summary judgment [ECF No. 40]; they say Plaintiff failed to exhaust his administrative remedies. The motion is fully briefed.

For the reasons below, Defendants' motion for summary judgment is **GRANTED**.  The case is **DISMISSED**.

## II.    BACKGROUND

From May 2016 to June 2017, Plaintiff was housed at SRF.

Plaintiff alleges that in May 2016, he began experiencing biliary colic, which is also known as a gallbladder attack.  He says the attacks were very painful, would last a few days, and occurred three to four times per month from May to December 2016.  Plaintiff says he informed Defendants about the attacks, but they did nothing to help.

On July 18, 2016, Plaintiff filed a Step I grievance complaining that Dr. Oliver would not provide medical care to address his gallbladder attacks. The grievance was denied at Step I; the response indicated that Buskirk examined Plaintiff on July 25, 2016, and a plan of care was completed. Plaintiff did not appeal the denial of this grievance to Step II or Step III of the prison's three-step grievance process.

On September 9, 2016, Plaintiff went to the emergency room and was diagnosed with gallstones.

On September 15, 2016, Plaintiff filed a Step I grievance alleging Dr. Oliver and Buskirk were negligent for failing to recognize that his symptoms were gallbladder attacks due to gallstones, and that they subjected him to cruel and unusual punishment. The grievance was denied at Step I. Plaintiff did not appeal the denial of this grievance to Step II or Step III of the grievance process.

On November 17, 2016, Plaintiff attended an off-site surgery consultation. Although the surgeon recommended to remove Plaintiff's gallbladder, an MDOC Utilization Management Medical Director denied the surgery recommendation.

Plaintiff alleges he suffered periodic abdominal discomfort from December 2016 to January 2018; however, he did not file any grievances during that time and "had no documented flare-ups in all of 2017." [ECF No. 1, PageID.25 ("[Plaintiff] was apparently compliant with diet changes and had no documented flare-ups in all of 2017.")].

On June 29, 2017, Plaintiff was transferred from SRF to Chippewa Correctional Facility. Then, sometime in or before January 2018, Plaintiff was transferred to Alger Correctional Facility. After Plaintiff was transferred from SRF, Defendants no longer were his medical providers.

On January 29, 2018, while at Alger Correctional Facility, Plaintiff submitted a medical request to be seen for gallbladder pain. [*See* ECF No. 1, PageID.25]. Plaintiff was seen the same day for an X-Ray and lab testing; additionally, medical imaging of Plaintiff's gallbladder was scheduled for – and ultimately completed on – February 20, 2018. [*Id.*]. The imaging showed chronic cholecystitis (i.e., inflammation of the gallbladder). [*Id.*]. The medical provider at Alger referred Plaintiff to an off-site surgeon, who recommended that Plaintiff's gallbladder be removed. [*Id.*, PageID.25, 27]. The surgery was approved; doctors removed Plaintiff's gallbladder in March 2018. [*Id.*].

On February 12, 2018 – before being seen for the HIDA scan and before his surgery – Plaintiff filed a Step I grievance alleging cruel and unusual punishment, deliberate indifference, and negligence against the "health care provider and Doctor [at] Alger Correctional Facility (2018) and Saginaw Correctional Facility (Sharon A. Oliver 2016 & 2017)" (the "February 2018 Grievance"). The prison responded to the grievance at Step I by stating: "While it is understood that the condition is painful, the grievant's condition is not at this time emergent in nature and evaluation and treatment is ongoing. Grievance denied." [ECF No. 1, PageID.25].

Plaintiff appealed the February 2018 Grievance to Step II of MDOC's grievance procedure on March 5, 2018. His Step II appeal reiterated the complaints from his Step I grievance.

The prison responded to Plaintiff's Step II appeal on March 22, 2018. At the outset, the prison emphasized that the "events of 2016 [would] not be addressed in th[e] response. Th[e] response will [only] address grievant's recent report of symptoms and Health Care's response to same." [ECF No. 1, PageID.27]. The prison then summarized the recent events, noting that Plaintiff was seen by an off-site surgeon and approved for gallbladder removal surgery. With respect to Plaintiff's claim regarding his medical treatment at Alger Correctional Facility in 2018, the prison concluded: "Grievant's claim is not supported. Interventions have been ordered as deemed appropriate . . . . Grievance denied." [*Id.*]. Notably, the Step II response did not address Plaintiff's claim regarding the medical treatment he received at SRF in 2016 and 2017.

On April 12, 2018, Plaintiff appealed the February 2018 Grievance to Step III of the grievance process. Plaintiff focused his Step III appeal on the medical treatment Dr. Oliver provided from May to November 2016 at SRF; he did not restate his claim regarding the treatment he received in 2018 at Alger Correctional Facility.

On July 3, 2018, Plaintiff's Step III appeal was "rejected" – as opposed to "denied" – for "inappropriate[ly]" "attempting to grieve several years and facilities at once" in violation of "the requirements outlined within [MDOC] PD 03.02.130" – i.e., the Policy Directive setting forth the MDOC administrative grievance-filing process which prisoners must follow before filing a § 1983 action challenging prison conditions.  [ECF No. 40-1, PageID.374].  The Step III response also indicated that it was inappropriate to file a grievance in February 2018 about the treatment provided in 2016, since "Step I grievances [must] be submitted within five business days after the grievant has attempted to resolve the issue, which [must] occur within two business days of becoming aware of a grievable issue." [*See id.*]. *See also* MDOC PD 03.02.130, ¶ P.

Plaintiff filed this case in March 2019.  Defendants move for summary judgment.

## III.   SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The movant bears the initial burden to inform the Court of the basis for its motion; it must identify particular portions of the record that demonstrate

the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id.* at 324. Unsupported, conclusory statements are insufficient to establish a factual dispute to defeat summary judgment, as is the "mere existence of a scintilla of evidence in support of the [non-movant's] position"; the evidence must be such that a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

In deciding a summary judgment motion, the Court "views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court need only consider the cited materials, but it may consider other evidence in the record. Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

## IV. ANALYSIS

Defendants say they are entitled to summary judgment because Plaintiff failed to exhaust administrative remedies.

Under the Prison Litigation Reform Act, a prisoner challenging prison conditions under 42 U.S.C. § 1983 must properly exhaust all available administrative remedies before filing suit.  42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 218-20 (2007).  "Proper exhaustion of administrative remedies requires 'compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.'" *Cook v. Caruso*, 531 Fed. Appx. 554, 562 (6th Cir. 2013) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)).  Thus, it is the prison's requirements "that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

The administrative remedy applicable here is the prison grievance process set forth in MDOC PD 03.02.130.  This policy directive sets forth a three-step grievance-filing process; prisoners must "file grievances that conform to MDOC procedures in order to properly exhaust available remedies." *Stringer v. Fyre*, No. 17-10999, 2017 WL 9477691, at *3 (E.D. Mich. Aug. 9, 2017) (citing *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 93), *report and recommendation adopted*, 2018 WL 636245 (E.D. Mich. Jan. 31, 2018).

First, the prisoner must attempt to resolve the problem with the allegedly offending staff member within two business days of becoming

aware of the grievable issue. *See* MDOC PD 03.02.130, ¶ P. If the attempt to resolve the issue fails, the prisoner has five business days to file a Step I grievance. *Id.* Prison officials then have 15 business days to respond to the grievance. *Id.* at ¶ X.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he or she has ten business days (from either the date of receipt of the response or the date the response was due) to submit a Step II grievance appeal. *Id.* at ¶ BB. Prison officials have 15 business days to respond. *Id.* at ¶ CC. Finally, if the prisoner is dissatisfied with the Step II response, or does not receive a timely response, he or she may file a Step III grievance appeal within ten business days. *Id.* at ¶ FF.

Non-exhaustion is an affirmative defense; a defendant in a prisoner civil rights case seeking summary judgment on administrative exhaustion grounds "must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017).

Plaintiff relies on the three grievances discussed above – the two filed in 2016 and the February 2018 grievance – to show that he properly exhausted his administrative remedies.

Defendants satisfy their burden to show that none of those grievances properly exhausted Plaintiff's claim against them.

The two grievances filed in 2016 clearly do not help Plaintiff. Plaintiff abandoned each of those grievances after receiving a response at Step I. Thus, he failed to timely appeal those grievances through Step III, as required by MDOC PD 03.02.130.

Defendants also demonstrate that Plaintiff failed to properly exhaust the February 2018 Grievance.

Although Plaintiff filed the February 2018 Grievance through Step III of the grievance procedure, Defendants argue that the February 2018 Grievance was not properly exhausted because it was rejected at Step III for violating MDOC's procedural rules, such that Plaintiff did not receive a merits-based response at all steps.  The Court agrees.  *See Woodford*, 548 U.S. at 90-91 ("[P]roper exhaustion of administrative remedies [is required], which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).' . . . Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without *91 imposing some orderly structure on the course of its proceedings." (citation omitted; emphasis in original)); *Cook v. Caruso*, 531

Fed. Appx. 554, 563 (6th Cir. 2013) (explaining that a prisoner must receive "merits-based responses *at each step*" of MDOC's grievance procedure to properly exhaust a claim (emphasis in original)).

Plaintiff argues that the February 2018 Grievance satisfies exhaustion requirements because: (1) the grievance was addressed on the merits at Step I and Step II; and (2) it was a continuance of the two grievances he filed in 2016 – concerning the ongoing issue of his gallbladder attacks – and his delay in proceeding with the grievance until February 2018 was excusable because he was transferred twice between the end of 2016 and February 2018.  Plaintiff is wrong.

Although the prison reviewed the merits of the February 2018 Grievance at Step I and Step II, it did so only with respect to Plaintiff's claim regarding his medical treatment in 2018 at Alger Correctional Facility. Plaintiff is not bringing this action against the medical providers at Alger or for the medical treatment he received at Alger in 2018.  This action concerns only the treatment Dr. Oliver and Buskirk provided in 2016 to 2017 at SRF. However, the Step I and II responses did not address the merits of Plaintiff's claim against Defendants regarding the treatment at SRF in 2016 and 2017.

Specifically, at Step I, the prison denied Plaintiff's grievance because "the grievant's condition is not *at this time* emergent in nature and evaluation and treatment *is ongoing.*"  [ECF No. 1, PageID.25 (emphasis added)].

Similarly, at Step II, the prison only considered the merits of Plaintiff's claim regarding the care provided at Alger, indicating that the "claim [was] not supported [because] . . . [i]nterventions ha[d] been ordered as deemed appropriate . . . ."  [*Id.*, PageID.27].  Indeed, the prison even emphasized that the "events of 2016 [would] <u>not</u> be addressed in th[e] response.  Th[e] response will [only] address grievant's recent report of symptoms and Health Care's response to same."  [*Id.* (emphasis in original)].

Finally, at Step III, the prison did not address the merits of the grievance at all; rather, it rejected the grievance on procedural grounds, as set forth above.

Because Plaintiff did not receive a merits-based response regarding the claim he attempts to assert here – i.e., the claim regarding the medical treatment provided at SRF in 2016 to 2017 – the February 2018 Grievance failed to properly exhaust the prison's administrative remedies.  *See Woodford*, 548 U.S. at 90-91; *Cook*, 531 Fed. Appx. at 563.

Moreover, because Plaintiff failed to properly exhaust the February 2018 grievance, whether it was a continuance of his two 2016 grievances is irrelevant.

Plaintiff failed to properly exhaust the claims asserted in this action through Step III of the MDOC grievance process. Thus, he failed to exhaust his administrative remedies as required before filing suit.

## V.  CONCLUSION

Defendants' motion for summary judgment is **GRANTED**.

The case is **DISMISSED**.

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  February 13, 2020